# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:17-cr-00244-APG-NJK |
| Plaintiff, | |
| vs. | ORDER |
| BRIAN SORENSEN, | (Docket Nos. 25, 30) |
| Defendant. | |

Pending before the Court is Defendant Brian Sorensen's motion to amend his conditions of release in order to allow him to associate with his co-defendant Dustin Lewis. Docket No. 25. Also pending before the Court is Defendant Dustin Lewis' motion for joinder. Docket No. 30. The Court has considered Defendant Sorensen's motion, the United States' response, Defendant Sorensen's reply, Defendant Lewis' motion, and the United States' response. Docket Nos. 25, 26, 28, 30, 31.[1]

---

[1] Although Defendant Sorensen captions his motion as a motion to modify his conditions of release, he cites to 18 U.S.C. § 3145 in requesting review of the undersigned's order. Docket No. 25 at 2. A motion for review of a magistrate judge's release order under 18 U.S.C. § 3145, however, must be filed within 14 days of the date of service of the release order. LR IB 3-5. In this case, the detention hearing for both defendants occurred on August 3, 2017. Docket Nos. 8, 9. The PR Bonds for both Defendants, containing the conditions of release, were served on the same day. Docket Nos. 13, 14.

Defendant Sorensen's motion was filed on October 2, 2017. Docket No. 25. Defendant Lewis' joinder was filed on October 11, 2017. Docket No. 30. These motions, therefore, were not timely filed as motions to review the undersigned's release order. Accordingly, the Court construes both motions as motions to modify conditions of release.

1 **I.     PROCEDURAL HISTORY**

2     On August 3, 2017, Defendant Sorensen appeared before this Court for his initial
3 appearance/arraignment and plea, as well as his detention hearing. Docket No. 9. After hearing
4 arguments of counsel, the Court released Defendant pending trial on a personal recognizance bond with
5 certain conditions. *Id*.; Docket No. 14. Defendant's conditions of release include a condition that he
6 "shall avoid all contact directly or indirectly" with his co-defendant unless such contact is in the
7 presence of counsel. Docket No. 14 at 4. At his detention hearing, Defendant objected to the necessity
8 of the no contact condition. Hearing Tr. (8/3/2017) at 3:39 p.m. The Court found that, having read the
9 Pretrial Services report, the recommended conditions, including the no contact condition, are the least
10 restrictive conditions to address the risks of nonappearance and danger to the community. Hearing Tr.
11 (8/3/2017) at 3:40 p.m. As a result, the Court imposed the no contact condition as a condition of
12 Defendant's release. Hearing Tr. (8/3/2017) at 3:41 p.m.

13     On August 3, 2017, Defendant Lewis also appeared before this Court for his initial
14 appearance/arraignment and plea, as well as his detention hearing. Docket No. 8. After hearing
15 arguments of counsel, the Court released Defendant pending trial on a personal recognizance bond with
16 certain conditions. *Id*.; Docket No. 13. Defendant's conditions of release include a condition that he
17 "shall avoid all contact directly or indirectly" with his co-defendant unless such contact is in the
18 presence of counsel. Docket No. 13 at 4; Hearing Tr. (8/3/2017) at 3:28 - 3:29 p.m. Defendant
19 affirmatively agreed with this condition of release, as well as all other conditions the Court imposed, at
20 his detention hearing. Hearing Tr. (8/3/2017) at 3:27 - 3:28 p.m.

21 **II.     DEFENDANT SORENSEN'S MOTION**

22     Defendant Sorensen asks the Court to modify his conditions of release by removing the condition
23 that he avoid all contact directly or indirectly with his co-defendant, Defendant Lewis, unless in the
24 presence of counsel. Docket No. 25 at 2. In support of his request, Defendant Sorensen states that he
25 and Defendant Lewis "have been best friends most of their lives [and] would like to be able to socialize
26 and remain friends while on release. *Id*. Defendant Sorensen further submits that an the Eighth Circuit
27 Court of Appeals held, in 1986, that a valid reason must exist for the association restriction condition
28 that will reasonably assure the appearance of the defendant in court. *Id*. at 3. Defendant submits that

as he and his co-defendant are not prior felons and no finding has been made that associating with each other would hinder them from appearing in court. *Id*. Therefore, he asks the Court to remove the condition. *Id*.

In response, the United States submits that Defendant Sorensen and Defendant Lewis committed a short sale mortgage fraud that "inflicted nearly half a million dollars in loss on the victim bank." Docket No. 26 at 1. The United States sets out the scheme agreed on by the two friends: essentially, Defendant Lewis owned a 5,331 square-foot home, on which he owed approximately twice its value; therefore, he and Defendant Sorensen agreed that Defendant Lewis would submit a short-sale application to the bank that held the mortgage, and would propose selling the home for approximately half its mortgage amount to Defendant Sorensen's mother. *Id*. at 2. In the short-sale application, the United States submits, Defendant Lewis made numerous false representations, including claiming that the sale was an arm's-length transaction; misrepresenting that he did not have an undisclosed side agreement with Defendant Sorensen to remain in the house and buy it back at a later date; and misrepresenting his financial means. *Id*.

The United States submits that e-mails exchanged between the co-defendants demonstrate their collusion in arranging for the short-sale and for the property to then be sold back to Defendant Lewis once the property was free and clear of the original mortgage. *Id*. The United States further submits that Defendant Lewis never moved out of the residence, and further sets out more details of the agreement between the co-defendants, as well as return of money from Defendant Sorensen to Defendant Lewis to cover the interest he paid between the short sale and the time he repurchased the residence, as well as Defendant Sorensen's misrepresentations and admissions when interviewed by the Federal Bureau of Investigation ("FBI"). *Id*. at 3-6. During the interview, Defendant Sorensen told the FBI that he "engaged in the fraud scheme due to his friendship with [Defendant] Lewis for whom he 'would lay down [his] life.'" *Id*. at 9. Significantly, Defendant Sorensen indicated that his motive for allegedly committing the crime for which he stands indicted is not profit but, rather, to help his friend, Defendant Lewis. *Id*.

The United States submits that the close friendship between Defendants Sorensen and Lewis "expressed itself in a criminal fraud conspiracy..." *Id*. at 8. Further, the United States notes that this

1 Court "routinely imposes as a condition of release that co-defendants have no contact with one another
2 while the case is pending," which "makes good sense, particularly where a Grand Jury has found that
3 the defendants conspired together to commit felony crimes." *Id*. Further, the United States submits that
4 it intends to indict Defendants Sorensen and Lewis for yet another short-sale mortgage fraud committed
5 by the two. *Id*. at 9. The United States submits that Defendant Sorensen needs contact with Defendant
6 Lewis to further the financial transactions on the yet-unindicted property. *Id*.

The United States submits that the Court "enjoys broad statutory discretion to prohibit previously-unconvicted co[-]defendants from associating with one another if the restriction is reasonably necessary to protect the community." *Id*. at 10. Further, the United States contends that the Eighth Circuit's decision cited in Defendant Sorensen's brief does not, as Defendant Sorensen submits, state a rule that pretrial conditions restricting associations are allowed only where reasonably necessary to ensure appearance in court, or that the defendant would need to be a convicted felon for the proper imposition of the condition. *Id*.

In reply, Defendant Sorensen reiterates that he and Defendant Lewis "have been best friends most of their lives [and] would like to be able to socialize and remain friends while on release." Docket No. 28 at 3. Defendant submits that he has no prior convictions and is aware of no prior convictions of Defendant Lewis. *Id*. Defendant further submits that the association restriction should only be used to assure the appearance in court of a defendant, and that "[n]othing about modifying the [condition] will cause [him] not to appear in court." *Id*. Defendant acknowledges the Court's discretion in fashioning conditions of release, and asks the Court to modify his conditions to remove the association restriction. *Id*.

### III. DEFENDANT LEWIS' MOTION

Defendant Lewis moves to join Defendant Sorensen's motion to modify conditions. Docket No. 30. In addition, Defendant Lewis submits that the condition "has no rational bearing on ensuring Defendants' appearance as required in this case, and is not reasonably necessary to assure the safety of any other person and the community." *Id*. at 1. Defendant Lewis submits that he knew he was the target of a federal investigation for more than a year-and-a-half prior to the indictment in the instant case, and that the United States "has zero evidence" to suggest that he or Defendant Sorensen has not cooperated,

is a flight risk, or poses a danger to the community "by virtue of their ability to communicate with each other outside the presence of counsel." *Id*. at 1-2.

Defendant submits that the short sale that is the subject of the instant indictment occurred in August 2011. *Id*. at 2. He further submits that he learned he was the target of a federal investigation in early 2016, and that his counsel has remained in contact with the United States since that time. *Id*. Defendant submits that Defendant Sorensen spoke to the FBI on February 23, 2016, and responded to inquiries regarding the short sale. *Id*. Additionally, Defendant submits that he listed the property for sale in July 2017, and that it was listed publicly through a licensed broker at that time. *Id*. Defendant contends that the "alleged victim [in this case] is a financial giant, which itself is accused of fraudulently benefitting from this exact type of transaction." *Id*.

Defendant contends that neither he nor Defendant Sorensen has prior criminal history, and that both voluntarily surrendered after learning of the issuance of the indictment. *Id*. He also submits that both co-defendants have financial conditions of release that have been imposed upon them. *Id*. at 2-3. Defendant submits that he is not a risk of nonappearance and that he and his co-defendant will not be a danger to the community if allowed to communicate with each other. *Id*. at 3. Defendant Lewis therefore joins Defendant Sorensen in asking the Court to modify his conditions of release to remove the no contact condition.

In response, the United States submits that Defendant Lewis and his close friend, Defendant Sorensen, committed a short sale mortgage fraud resulting in over $400,000 in loss. Docket No. 31 at 2. The United States, as it did in response to Defendant Sorensen's motion, sets out the scheme agreed upon by the two friends: essentially, Defendant Lewis owned a 5,331 square-foot home, on which he owed approximately twice its value; therefore, he and Defendant Sorensen agreed that Defendant Lewis would submit a short-sale application to the bank that held the mortgage, and would propose selling the home for approximately half its mortgage amount to Defendant Sorensen's mother. *Id*. at 2. In the short-sale application, the United States submits, Defendant Lewis made numerous false representations, including claiming that the sale was an arm's-length transaction; misrepresenting that he did not have an undisclosed side agreement with Defendant Sorensen to remain in the house and buy it back at a later date; and misrepresenting his financial means. *Id*.

The United States submits that e-mails exchanged between the co-defendants demonstrate their collusion in arranging for the short-sale and for the property to then be sold back to Defendant Lewis once the property was free and clear of the original mortgage. *Id*. at 3. The United States further submits that Defendant Lewis never moved out of the residence, and further sets out more details of the agreement between the co-defendants, as well as return of money from Defendant Sorensen to Defendant Lewis to cover the interest he paid between the short sale and the time he repurchased the residence, as well as Defendant Sorensen's misrepresentations and admissions when interviewed by the Federal Bureau of Investigation ("FBI"). *Id*. at 3-6. During the interview, Defendant Sorensen told the FBI that he "engaged in the fraud scheme due to his friendship with [Defendant] Lewis for whom he 'would lay down [his] life.'" *Id*. at 5. Defendant Sorensen specifically stated that his motivation was that Defendant Lewis is "my best friend." *Id*.

After he was notified that he was a target of this investigation and that he was going to be indicted, the United States submits, Defendant Lewis listed the property at issue for sale. *Id*. at 6. If the property sole for the price at which Defendant Lewis listed it, he stood to profit approximately $755,000. *Id*. Ten days after Defendant Lewis listed the property for sale, the instant indictment was issued against him. *Id*. at 7.

The United States submits that Defendant Lewis' motion "initially focuses on maligning the victim bank he defrauded," as well as the ubiquity of short sale fraud in the late 2000s. *Id*. at 7-8. The United States contends that this argument is irrelevant to the issue at hand, and will not serve as a defense to the charges against Defendant Lewis. *Id*. at 8. Further, the United States submits that Defendant Lewis and Defendant Sorensen participated in a second short sale fraud for which they will be indicted as well. *Id*.

The United States contends that Defendant's claim that his attorney has remained in constant communication with the prosecution since being advised that he was a target of this investigation is not true. *Id*. Rather, the United States submits that it last had contact with Defendant's attorney on April 11, 2017; three months and 11 days later, Defendant "quietly" listed the subject property for sale at a large profit. *Id*. The United States submits that the fact that Defendant "would attempt to further his fraud scheme knowing that he was under investigation demonstrates the financial danger he poses to the

community." *Id*.

The United States further submits that, contrary to Defendant's contention that it has "zero evidence" that allowing Defendant to communicate with his co-defendant is likely to result in financial danger to the community, the United States and both defendants have actual evidence of that ilk in the form of e-mails between the two co-defendants. *Id*. at 8-9. The United States submits that these e-mails demonstrate a second short-sale scheme between the co-defendants that defraud a bank out of its mortgage loan interest, and that Defendant continues to hold that property in furtherance of the fraud. *Id*. at 9. The United States submits that the co-defendants need to communicate with each other so that Defendant Sorensen can "continue to pay [Defendant Lewis] to be the nominee owner of a residence that Lewis purchased from Sorensen in the second uncharged short sale fraud. *Id*. at 8. Finally, the United States contends that it has advised Defendant Lewis that, in addition to the second short sale case, he will be indicted "for two other schemes that include bribing a federal official and committing tax fraud in his role as a CPA." *Id*. at 9. Defendant Lewis' "extensive corruption," the United States submits, "is a clear and present financial danger to the community." *Id*.

In reply, Defendant Lewis submits that the United States asks the Court to consider allegations of crimes that have not yet been charged, though Defendant fails to submit any authority that such consideration is improper. Docket No. 36 at 2. Further, Defendant submits that he and Defendant Sorensen are subject to financial restrictions that will safeguard against "any perceived financial risk to the community." *Id*. Finally, Defendant submits that the combination of conditions imposed are sufficient, and that precluding communication between the co-defendants outside the presence of counsel "is unnecessarily restrictive." *Id*.

**IV. ANALYSIS**

The Bail Reform Act of 1984, 18 U.S.C. §§ 3141, *et seq*., requires the release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991); *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985). Release should be denied only in rare circumstances, and doubts regarding the propriety of release should be resolved in favor of release. *Gebro*, 948 F.2d at 1121. The Bail Reform Act requires release unless no

condition or combination of conditions can reasonably assure both the appearance of the person and the safety of the community. 18 U.S.C. § 3142. "In our society liberty is the norm and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

In determining whether to detain or release a defendant, the Court considers (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or to the community should the person be released. 18 U.S.C. § 3142(g). Although the Bail Reform Act allows the Court to impose any condition of release "that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community," 18 U.S.C. § 3142(c)(1)(B)(xiv), one of the conditions it specifically sets out is a condition that a defendant abide by "specified restrictions on personal associations..." 18 U.S.C. § 3142(c)(1)(B)(iv).

The statute does not define the harm a court is to obviate when assuring the safety of any other person and the community. "It is evident that every person charged with an offense poses some risk of harm to another person or the community." *United States v. Harris*, 920 F.Supp. 132, 133 (D.Nev. 1996). The degree of that harm will vary with each case. Therefore, the danger against which a court must safeguard encompasses much more than the risk of physical violence, and reasonable release conditions may be imposed to prevent the reoccurrence of criminal conduct for which the accused has been charged. *Id*. "Often it is economic or pecuniary interests of a community rather than physical ones which are most susceptible to repeated danger by a released defendant." *Id*.

18 U.S.C. § 3142(c)(1)(B) identifies thirteen specific conditions which a Court may place on an arrested person as a part of pretrial release. Additionally, 18 U.S.C. §3142(c)(1)(B)(xiv) allows the Court to tailor and impose "any other condition that is reasonably necessary ... to assure the safety of any other person and the community." The conditions set out in the statute are reasonable regulatory limitations on individual liberty interests of charged persons released from custody pending trial that were established by Congress in response to a compelling government interest in crime prevention and community safety. *Salerno*, 481 U.S. at 749. Nothing in the statute limits the Court to imposing a specific condition of release to address solely a defendant's risk of nonappearance as opposed to that

defendant's risk of danger to any other person or the community. 18 U.S.C. § 3142. *See also Salerno*, 481 U.S. at 754.

"It is not uncommon for courts to impose conditions of pretrial release that attempt to prevent or reduce the risk that the defendant will engage in similar or related criminal activities to those charged in the complaint or indictment." *United States v. Call*, 874 F.Supp.2d 969, 979 (D.Nev. 2012). For example, "a defendant may be precluded from engaging in a certain occupation or employment if there is a substantial risk that the defendant will use the access provided by the employment to commit additional crimes." *Id*.

In the instant case, released both defendants on personal recognizance bonds with certain conditions, that the Court found to be the least restrictive conditions to address the defendants' risk of nonappearance and danger to the community. Docket Nos. 8, 9, 13, 14. One of the conditions imposed by the Court, as specifically set out in the applicable statute, is a condition restricting the defendants from having any contact, either directly or indirectly, with each other except in the presence of counsel. 18 U.S.C. § 3142(c)(1)(B)(iv). See also Docket Nos. 13 at 4, 14 at 4. The Court considered the nature and circumstances of the offense charged; the weight of the evidence against defendants; the history and characteristics of each defendant; and the nature and seriousness of the danger to any person or to the community in making its determination. The defendants in the instant case are lifelong best friends who are charged with having engaged in fraudulent activity together. The motivation of at least one of the defendants was the friendship of the other defendant. Even if the United States had not submitted that the defendants will be charged with further criminal acts, the Court can impose a condition of release, such as the no contact condition, that is aimed at preventing or reducing the risk of future criminal activity. *Call*, 874 F.Supp.2d at 979. The Court finds that the combination of conditions, including the no contact condition, imposed upon these defendants is the least restrictive method of addressing the defendants' risks of nonappearance and danger to the community. Specifically, the no contact condition is aimed at addressing the defendants' risk of financial danger to the community, and the Court finds that it is the least restrictive condition that may be imposed, along with the other conditions imposed, to address this risk.

. . . .

## V. CONCLUSION

Accordingly, for the reasons stated above,

**IT IS ORDERED** that Defendant Sorensen's motion to modify conditions of release, Docket No. 25, is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Lewis' motion for joinder to Defendant Sorensen's motion to modify conditions of release, Docket No. 30, is hereby **DENIED**.

IT IS SO ORDERED.

DATED: October 23, 2017.

_____
NANCY J. KOPPE
United States Magistrate Judge